894 F.2d 402
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gerald Pierre CARTER, Defendant-Appellant.
 No. 89-5137.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Dec. 1, 1989.
Decided: Jan. 9, 1990.
 
 Paul R. Kramer, Paul R. Kramer, P.A., on brief, for appellant.
 Breckinridge L. Willcox, United States Attorney; Carmina S. Hughes, Assistant United States Attorney; James R. Alsup, Assistant United States Attorney, on brief, for appellee.
 Before K.K. HALL and WILKINS, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Gerald Carter appeals the district court's denial of his motion to dismiss his indictment because it was returned 40 days after his arrest allegedly in violation of the Speedy Trial Act, 18 U.S.C. Sec. 3161(b). Carter entered a conditional plea of guilty to conspiracy to possess with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. Sec. 846 and use of a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. Sec. 924(c). Carter reserved the right granted by Federal Rule of Criminal Procedure 11(a)(2) to appeal the order denying his motion to dismiss the indictment. We affirm the denial of the motion.
 
 
 2
 * In August of 1988, the Baltimore County, Maryland, Police Department and the Federal Drug Enforcement Administration were jointly investigating violations of narcotics laws. On August 19, 1988, federal agents and state police officers arrested Gerald Carter and two other men after a controlled buy of cocaine. Carter was first taken to the DEA offices in Baltimore where the DEA took custody of the seized evidence. Carter was then taken to the Baltimore County Police Precinct for processing by state authorities. The state officers completed an Application for Statement of Charges/Statement of Probable Cause which stated that the officers believed that Carter and two others violated federal and state law. Carter was taken before a State Commissioner and bond was denied. According to the Commissioner's notation on the Initial Appearance Report, Carter was not released on personal recognizance because of the "nature of charges, awaiting trial [on] federal charges, poss[ible] sentence, and recommendation by S.A." A state district court judge later set bond at $200,000. The U.S. Attorney's office initially deferred the prosecution to the state. On approximately September 21, 1988, after discovering that Carter had a serious criminal background, the U.S. Attorney's office decided to pursue a federal prosecution. On September 28, 1988, a federal grand jury indicted Carter and two codefendants.
 
 II
 
 3
 Carter contends that the government violated the Speedy Trial Act by returning his indictment more than 30 days after his arrest. Under the relevant portion of the Act, "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within 30 days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. Sec. 3161(b).
 
 
 4
 This circuit has interpreted section 3161(b) to mean that the 30-day time period does not begin to run until there is a federal arrest. United States v. Iaquinta, 674 F.2d 260, 264 (4th Cir.1982). An arrest is not necessarily federal because federal agents and state officers cooperate in the investigation leading up to the arrest. 674 F.2d at 268. The key fact here was that there was no formal institution of a federal prosecution until the federal grand jury indicted Carter. As in Iaquinta, 674 F.2d at 261, the U.S. Attorney's office originally referred the case to the state for prosecution. The U.S. Attorney's office did not decide to prosecute Carter on federal charges until over a month after the arrest. Because Carter was not under federal arrest or in federal custody until after his indictment by a federal grand jury, we find no violation of the Speedy Trial Act.
 
 
 5
 We recognize the factual differences between this case and Iaquinta, 674 F.2d 260. In Iaquinta, the defendants were only charged with a violation of state law after arrest, 674 F.2d at 262; here the statement of charges included federal and state law. Unlike the facts of Iaquinta, here there was no evidence of an agreement before the arrest that the federal government would defer prosecution to the state. The seized contraband in Iaquinta was retained in the custody of the state, 674 F.2d at 262; here the evidence was taken into federal custody.
 
 
 6
 We do not believe these differences compel a different result. First, although the statement of charges included violations of federal law, it is more significant that Carter was held in state custody and the U.S. Attorney's office chose initially to defer prosecution to the state. Second, we do not believe a prearrest agreement is a necessary prerequisite to keep the 30-day time limit from commencing. Finally, the fact that evidence is taken into federal custody after a state arrest does not necessarily mean the 30-day clock is triggered. See United States v. Lai Ming Tanu, 589 F.2d 82, 88 (2d Cir.1978).
 
 
 7
 Sound policy reasons support this ruling that the 30-day clock did not begin to run at the time of the initial arrest on August 19, 1988. In United States v. Ferrs, 503 F.Supp. 187 (E.D.Pa.1980), aff'd, 676 F.2d 688 (3d Cir.1982), the court reasoned that if the 30-day time period began to run at the time of the initial state arrest following a cooperative federal-state investigation, the U.S. Attorney would be forced to indict the defendant in 30 days. This would preclude the federal government from choosing to wait for the state to prosecute, which undermines prosecutorial discretion, federal-state relations, and the policy of preventing unnecessary dual federal and state prosecutions. 503 F.Supp. at 189. See also Lai Ming Tanu, 589 F.2d at 87-89.
 
 
 8
 We do not find error in the district court's decision not to grant a hearing on Carter's motion to dismiss. The significant facts were not in dispute, and the district court acted properly within its discretion to decide the question of law without a hearing. Cf. United States v. Hutchins, 489 F.Supp. 710, 711 (N.D.Ind.1980).
 
 
 9
 AFFIRMED.